Mr. Johnson, yes, please proceed. Thank you Congratulations. Thank you. Your honors. My first issue. My name is Thomas Johnson. I represent. Mr Bravo Lopez counsel if you can get that mic just you can raise the podium. There's a button to your right there that on the yeah I think we'll hear you a little better. Okay. Can you hear me now better? Yes Okay, my first issue is the jury instruction on the defense theory of the case Basically the government's arguing and it's brief that we waived our right to the jury instruction on mr. Bravo Lopez mental health and I'm arguing here that we didn't waive it and the reason why are the facts the facts are clear in the record We presented our instruction timely on the court schedule The court thought does get the the instruction was a little verbose but never explained why that was a case were pointed out specific Examples of verbosity the government objected the court then proposed its own instruction That's indicated in the record if their instruction was based the same as ours on the voluntary intoxication instruction and Then the government proposed its instruction was based on the Seventh Circuit diminished capacity So there were three three instructions that were floating around the court asked for my opinion with respect to the government's instruction I objected and I gave specific reasons for those objections and then the court announced it was going to give the government's Proposed instruction and we moved on subsequent to that for the purpose of the record I asked to be heard the court allowed me to be heard and then I She asked me to prepare edits to the government's instruction, which I did and which were made part of the record by the government And that instruction as Edited by us was never really taken up and discussed in any kind of detail But it's one that we would have agreed to that wasn't our own specific instruction So the issue isn't the issue here isn't whether or not. Mr Bravo Lopez should have his version of the instruction but rather an instruction based on the evidence that was presented We presented mental health evidence And with respect to the issue of specific intent which was which was clearly critical to our defense the government Indicates in its argument that we misstate our instruction mistakes the law But again, that's that isn't isn't inaccurate up. We don't believe that that's accurate specifically They cite that we didn't that there's their instruction better underlines or better points out what are the specific intent elements of the crime of conspiracy and also of the Kidnapping resulting in death counsel as I understand you were able to introduce evidence of Diminished capacity and argued the same to the jury, correct? Yes, sir. We did we we presented expert Testimony, and we also argued it in our closing argument, but judge and that's the reason that the government argues. It is harmless error but I would disagree with that because Because evidence and argument by counsel can never replace instructions The authority of instructions given by the court never Those are those instructions that the court gives have the court stamp of approval That's the law that is supposed to be followed. What was the what was missing from what would have been before the jury? that would have Made a difference in this case. This is I'm asking for a demonstration of prejudice Well, sure judge specifically the fact that that was an instruction That would have acted had they found the facts to follow up to for that instruction that that was an excuse under the law For mr. Bravo Lopez's behavior and that didn't exist There was no there was no authority from the court saying that that is a legal theory that the defendant is allowed to argue It's just the defendant making an argument. It's not the same in our view. It's not the same For for these reasons judge We believe that the court abuses discretion and committed reversible error that should have given us the instruction on mental health Maybe not necessarily ours, although we thought that was perfectly fine But a version of the other and the court never did it it just abruptly decided it was going to give the government's instruction asked for additional Asked for additional input for me We gave it and then decided without any additional explanation at the time that there was going to be no instruction The second issue that I would like to take up is the issue of the Sixth Amendment confrontation, right? We were prohibited from crossing. Mr. Sosa the government's cooperating witness who was also one of The the defendants in the case on the issue of mandatory life. The court told us we could only talk about facing a life sentence but we feel like the law actually says that We should defendants should be able to cross-examine a crop cooperating witness on the original punishment faced by the witness compared with a more lenient punishment as a reward through a plea agreement a Critical factor and whether or not you can do that is whether is as the court has set out in the Wally case Whether or not he's received the benefit at the time. He's actually making his testimony and this clearly was the case here Sosa had already received the government's Dismissed count to which was the mandatory life count and It was an important benefit and it was fundamentally different from from what the court told us we could talk about What authority is there that there is a fundamental fundamental difference between the jury being told? that a Cooperating witness is subject to life imprisonment Versus being told that they're subject to mandatory life in prison Judge the the fundamental difference is that it was Mandatory life is a minimum life sentence a life sentence is a potential life sentence Guided more by the guidelines and the jury would have needed the court would needed us to make that my question to you is Where do we find law that tells us that's a reversible error? The the law is in the case in the case law that basically if the jury would have had if the jury might have Considered that the cooperating witnesses testimony in a different light Then it's a violation of the right to confrontation that that is in the case law and here We're saying had that have we been allowed to make that specific difference because otherwise the jury wouldn't have known it and we needed to cross Examine on a mandatory life versus just potential or facing life Because that way there was no distinction between count one and two the government dismissed count to which was a mandatory life sentence But he pled to count one Which had a potential life sentence and so the court by forcing us to talk only about facing life neutered any difference between those two things and the jury wouldn't have known that unless it was a The court would have allowed us to bring it forward and that had that had so unwittingly the court basically is bolstering Mr.. Sosa's credibility versus us being allowed to show that there's biased here, and this has And this is important. I think for a lot of reasons, but importantly in that is the issue of a Fundamental issue in the case was that mr. Mr. Sosa testified mr. Sosa pled guilty to the conspiracy count yet. He testified at trial that there was no conspiracy and It raises the it raises the issue of his credibility how can you testify to two contradictory things and we believe that that led to jury confusion and Ultimately they ended up convicting him of the conspiracy, but we don't know exactly What they were thinking Because the only conspiracy charge was the one that was charged with all three people and that's the one that Sosa pled to government discount to which is the mandatory life, which is what they were ultimately convicted of and What was left out of that and what seems like the case if he's going to testify that there was no conspiracy is Why would he plead to that? So the question is was he lying at the time of the plea to get the benefit of the reduced reduction of the sentence from Mandatory life to just a potential life under the conspiracy Which seems more likely to be the case than he was lying at trial about about the actual existence of a conspiracy because his statements at trial were consistent with his pretrial statements and they were all Consistent with another witnesses statements at trial that there was no conspiratorial agreement So we believe that there is this We have met our standard of the Sixth Amendment That the jury had they known the true facts the difference between had we been allowed to cross-examination on cross-examine on mandatory life versus just potential life the difference between count one and two would have become evident that would have Also allowed us to discuss the issue with respect to where he was lying Why did he plead to conspiracy and not the other because basically he wanted the benefit of not having mandatory life He also testified but didn't the district court give a rationale for its declination of your Request a rationale a reason for Why well the reason that the court gave is it would come too close to sentencing and that wasn't the province of the jury But the reality I believe judge with respect to that is that could easily have been cured With with a cautionary instructions the jurors are presumed to follow once they're given and that that Consideration shouldn't trump a defendant's Sixth Amendment right to show biased at the trial. And so I don't believe that her her Rationale for doing that was Was valid under the circumstances. It was a case where it wasn't enough It wasn't like the right case where the judge told them they could talk about Decades versus life the guy was 44 the cooperating with was 44 years old and decades in prison was More or less tantamount to life. That wasn't Sosa's case. Sosa was a young man and he had Decades in life, I mean that wasn't it wasn't It wasn't equal in that sense and more importantly for the for the sense that I just explained the jury would have never known the Difference between counts one and two and what it meant in terms of the plea agreement for them to dismiss count two Because he was still facing life on count one Which he testified he didn't think he would get but the jury would have probably concluded Well, he put in again life on count two that that important essential distinction can't be encompassed within facing life because it just Deludes the difference between count one and two Which was unfair? the other issue that I would like to address is The issue with respect to the insufficiency of evidence on with the conspiracy I want to point out that the jury instructions in this case Actually, it's jury instruction 26 actually required the government to prove an agreement made by a verbal or oral understanding This is the government's proposed instruction. It says verbal or oral understanding and that means in plain language Not written but a comprehension of spoken language and there was no evidence that supported that in the case the people that were with The defendants at the time leading up to and through the through the crime that were Sosa and a woman by the name of Zapata Delgado who who was up up to their letter off and Then they continued on with Sosa and both of them said repeatedly said there was no evidence of an agreement to rob To kidnap and rob mr. Escutia The government doesn't point to any evidence that actually would Which which two of the defendants pointed guns at at the victim which two defendants Mike my client and mr. Kelly's client But but the difference that I were intended at that time I think the record is clear They were they were robbing the defendant Yes, sir. They both pulled up to the house Sosa testified at the time that their house everything was normal No agreement could no no conspiratorial agreement. They got out of the car and at that point in time, they're involved in the crime I mean, I mean you they're aiding and abetting each other. I mean they did get him in the car They did point guns at him. He had a gun too, but but the distinction back in the car and departed Pardon me. They then forced him back in the car and departed before they leave They forced him into the car They drove around But they didn't and they drove back to the house to let him off And saw the police and then drove and crossed the river into bridge across the river into Kansas, right? That's all right But my point is that there has to be a conspiratorial agreement and you can't under those facts you can't distinguish between a conspiratorial agreement and aiding and abetting because there was no No evidence up to the point that they were actually involved in the crime and there has to be some sort of a Verbal wasn't their communication prior about the desired that That they were going to get drugs together from they were gonna go buy marijuana But there was no agreement with respect to kidnapping robbing or anything like that. There was no Oral statement there was nothing like that. It was all that it was all about. Let's go buy marijuana Does the law require that the agreement be either in writing or verbally stated? No, no doesn't require to be in writing In fact, it's probably not going to be in writing But it has to be it has to be an oral understanding and that implies that there have to be some sort of spoken words That are understood whether there's an oral agreement to to do the same thing That's being spoken about or not But the only the only agreement was proof of a conspiracy to go buy marijuana. That's it There was no agreement to do the other part which was he was nobody was ever charged with an agreement to Buy marijuana it was simply Something that they were going to go do but it wasn't what actually ended up happening so I guess that We don't believe there's any evidence and all the government supplies and it's brief is conjecture speculation Every one of the instances the evidence be circumstantial. Of course it can but there still has to be circumstantial evidence of this non this verbal agreement Non-written verbal agreement or oral understanding the government's postulates other kinds of circumstantial evidence would indicate there wouldn't Be a requirement for a verbal agreement. That's what's in the instruction I mean the government argues there was a tacit agreement and it's and it's brief But it can't point to anything that would indicate The agreement before they're actually involved in the crime council you just about exhausted your time and you may want to reserve Yeah, well, okay. I'll reserve whatever's left. Thank you Thank you Mr. Kelly Counsel may it please the court Good morning, Your Honors and congratulations to this woman Well, we'll definitely miss you with respect to My side of the case. I'm here in behalf of mr. Osorio. I am a CGA appointment I was not trial counsel. So I want to make sure that is clear With respect to the two points that were raised on mr. Osorio's behalf I would quickly start with count point two and then obviously I'm going to recognize that Barraza is a controlling precedent in this circuit that Rosamond came along from the Supreme Court thereafter and then this circuit I wouldn't say distinguish Rosamond, but certainly Had a different take on it than some of the other circuits and followed Barraza with Simpson which again readopted Barraza's Points and so when it comes to specific intent candidly, I don't expect to shake the earth here today It is probably we have an emerging circuit split on the specific intent instruction whether it should have been given or not whether death was Also should go along with the specific intent we expect that'll make its way to the Supreme Court of the United States Perhaps in this case perhaps in another But that is why that was raised. I do want to follow up on my Distinguished co-counsel's argument, which is my point one about whether or not Right should have been applied or whether it was correctly applied I have two arguments with that and then I'll sit down The first argument is that right is distinguishable the difference in right was that there was no materiality difference when it came down to Normatively and I normally subjectively and objectively what the sentence of changes may be from cooperation to Non-cooperation whereas here we have a gentleman who testified in his 20s and he got a 10-year sentence and there is an enormous difference between the fact that he will probably be out for if he lives a Good and proper and healthy life another 40 or 50 years Where the defendant and right what whether he received a 20-year sentence or a mandatory life? The difference was negligible. The difference was substantial here the other argument that I would have is and really what I want to spend the final two minutes on is Was actually quoted in this circuit's decision in right out of Larson out of the Ninth Circuit and it states out of Larson while the government has an interest and I want to bounce up and down on that as hard as I can in preventing a jury from inferring a defendant's potential sentence any such interest Is outweighed by the defendant's right? to explore the bias of a cooperating witness who is facing a mandatory life sentence and that not only is Factually distinguishable in right from the facts But is we go back to a normative sort of argument. What are we afraid of here? Why are we afraid that a jury might actually hear what somebody might get versus somebody who is not? We are here in the state of Missouri where juries now have the right to sentence I understand that in the federal system. I was a federal law clerk and I know that to judge Russell Clark And I would point out that I have yet to hear a circuit or a district court judge Who didn't want to make sure a defendant knew that they were the final arbiter of sentencing and I understand where that comes from But In the words of or in the pit to paraphrase judge Scalia late of the Supreme Court of the United States He was a big fan of let's get the facts to the jury. Let's let them make the material decisions and that didn't happen here and normatively, I am Puzzled why we have this Governmental interest which sounds like something that's just well, you know, that was an interesting TV show last night versus a constitutional right to go at potentially and in this case Absolutely, the most damaging witness in this case without whose testimony the case becomes very tenuous Especially when coupled with my point number two if there's no specific intent and that's a whole nother thing Then that witness becomes critical and the jury's understanding of that potential witnesses motives of not spending the rest of his natural life in prison versus getting for gosh sakes a 10-year sentence is enormous the instructions that were given were Absolutely misleading to the jury and that defendants rights were violated. Thank you all very much Thank You, mr. Kelly, mr. Wagner May it please the court David Wagner for the United States. I Have just a few very very brief words about Mr. Osorio's argument with respect to intent that death result from the kidnapping He's acknowledged this courts controlling decisions in Barraza and Simpson, but he raised the possibility of a circuit split I just wanted to note that nowhere in the briefs has mr Osorio cited any other circuit that has come out differently than this courts decisions in Barraza and Simpson on this question of whether a Defendant has to know or intend that death results from a kidnapping. So I would just ask this court to follow Its previous controlling opinions on that matter Turning to the issue of The limitation on cross-examination, I wanted to respond to a couple points here First of all, the district court worked very hard to accommodate the defendants interests in Fully cross-examining the government's cooperating witness. Mr. Sosa Perea and The Supreme Court has said that district courts have wide latitude in this area specifically wide latitude to impose reasonable limits on cross-examination And that was the discretion the district court was exercising in this case The district court was properly concerned that informing the jury about the sentence The mandatory life sentence for the kidnapping resulting in death count could cause the jury to improperly consider that the defendants Who are on trial would receive that sentence if the jury returned a verdict of guilty This court has recognized that that is a proper concern. Mr. Osorio points out that the government only has an interest in not allowing Improper information to go to a jury, but I think it's more than that The government as well as defendants has an interest in a fair trial and that was the interest the district court Attempting to accommodate by finding a reasonable Middle ground between the term mandatory life and some other phrase And in fact, the district court didn't just come up with the alternative phrasing of its own accord It asked the defendants what alternative phrase they would prefer and while reserving their right to object to not being allowed To use the phrase mandatory life the defendants proposed the phrase facing a life sentence So the defendants were able to establish that the cooperating witness had been facing a life sentence under the Kidnapping resulting in death charge that the government had agreed to dismiss They were able to establish on cross-examination that dismissal of that charge was a significant benefit to the cooperating witness and they were also able to establish that the cooperating witness faced only a potential life sentence as a Dismissal of that charge and under the conspiracy charge he pledged so the defendants were able to set successfully contrast the potential life sentence that the cooperating witness faced after his deal with the government with the life sentence that he faced before his deal with the government and the defendants also went on in closing to argue that the Cooperator had received a good deal from the government and to point out that he was no longer Facing a life sentence in this context the jury would have been able to understand that the cooperator had received a significant benefit as a result of his agreement with the Government and understood his motivation to testify favorably for the government. Are there authorities that create a distinction between facing life in prison versus mandatory life I would point you to the this court's decision in Wright Judge Smith where this court itself used the phrase Facing a life sentence to mean a mandatory life sentence I think that phrase was used to mean to mean mandatory life sentence twice in that opinion Which I believe reflects that that is the common understanding of that phrase Particularly when it's contrasted with potential life sentence life sentence potential life sentence the jury heard the distinction between Those two concepts and I don't think that the cross that the jury in this case would have received a Significantly different impression of the witnesses credibility had defense counsel been permitted to pursue their proposed line of cross Examination and use the term mandatory life and that is the test that this court should apply And of course, even if this court were to find that the district court abused its discretion by trying very hard to accommodate These competing interests any error would be harmless beyond a reasonable doubt and I want to clarify how the reason or how the harmless error standard works in this context because I think a little Confusion developed on this point in the reply brief The question is not whether this court can conclude that the jury would have convicted the defendants if the cooperating witness had not testified at All that's not the that's not the proper inquiry the proper inquiry and this comes from the Supreme Court's decision in Delaware vs Van Armstead which is cited in the briefs proper inquiry is whether this court can determine that the error was harmless had the defendants been allowed to pursue their proposed line of Cross-examination in other words had they been able to use the phrase mandatory life. Would the jury have returned a verdict of acquittal? and the answer is no because so Supreya the cooperating witness was extensively cross-examined by the defendants and his testimony was corroborated by a Testimony from the woman who was involved initially with with the defendants miss Zapata Delgado By mr. Bravo Lopez his own confession by the security videos of the kidnapping Remember, this is a crime that was literally caught on tape. The defendants were caught on tape kidnapping. Mr Escudia beating him with guns forcing him into a car there was also the forensic evidence of The victim's DNA in the van that was used during the kidnapping the evidence of blood in that van and the evidence of mr Osorio's DNA on the beer can found by the victim's deceased body Considering all that evidence It's clear beyond a reasonable doubt that even if the defendants had been able to use the phrase Mandatory life sentence as they wished the jury still would have returned a verdict of guilty It did not make a difference to the outcome of the case Unless there are additional questions on that issue I'd like to turn to the issue of the theory of defense instruction, which is an issue that mr. Bravo Lopez has raised. I Think it's important for this court to recognize how hard the district court worked to accommodate. Mr Bravo Lopez's request for a theory of defense instruction The court initially found his instruction overly verbose and asked him to rephrase it After a bunch of back-and-forth Including the district court trying to formulate its own theory of defense instruction the government proposed an instruction The district court found that instruction consistent with the law and appropriate to give and offered to give it but mr Bravo Lopez objected to that instruction in other words the district court did not deny mr Bravo Lopez a theory of defense instruction in this case the district court offered to give one but mr. Bravo Lopez rejected He was essentially taking the position that it was his instruction his wording of the instruction or nothing But of course a defendant does not have a right to a particularly worded instruction The only right is to an instruction that adequately states the law which the district court found the government's instruction did and mr Bravo Lopez has not attempted to articulate on appeal either in the briefs or in his argument here today What was legally wrong with the government's proposed instruction? For that reason this issue is waived the district court offered to give a theory of instruction a theory of defense instruction in mr Bravo Lopez objected that is a waiver It's just the flip side of the coin of the principle that if you ask for an instruction in the court gives it you can't Object to the giving of that instruction on appeal here the district court offered to give an instruction and mr Bravo Lopez objected which means the issue is waived There was some discussion about the government's proposed instruction and mr Bravo Lopez's edits to that instruction and I wanted to draw those to the court's attention because I think they're significant and you can find that The government's proposed instruction with mr Bravo Lopez's counsel's handwritten edits at page a3 of the addendum to the government's brief And I wanted particularly to note for the court the the proposed addition that mr Lopez Proposed which was that having a mental disease or defect provides a legal excuse for the commission of the crime that word excuse is Important and it was used here during mr. Bravo Lopez's argument today The reason that that word is important is it reflects that the evidence? Mr. Bravo Lopez was introducing a trial was not Evidence real it was not really evidence of diminished capacity. It was not evidence that served to It was rather what this court has referred to as diminished responsibility evidence There was no evidence that mr Bravo Lopez had a mental condition that would cause someone to be able unable to enter into an agreement to kidnap someone or to Kidnap someone with the purpose of robbing them or to have the mental intent to intentionally and knowingly Transport someone while they had been kidnapped the evidence rather was that mr Bravo Lopez had conditions that would have affected his judgment his academic achievement his social interactions his ability to plan or Organize or learn from experiences is in to exercise independent decision-making and to be subject to gullibility That evidence does not go to mr. Bravo Lopez's ability to form specific intent Which means that mr. Bravo Lopez did not introduce evidence to support his proposed theory of defense instruction And I would encourage the court to look at opinions from some other circuits Which have been cited in the brief that talk about this distinction between evidence showing diminished responsibility and evidence showing diminished capacity Sometimes those terms are used in different ways in the case law But this court has used them to mean specific things in its opinion and Barrett but what these other opinions which we've cited in the brief say is that courts need to be very careful to Has the potential to confuse the jury if it does not necessarily relate to diminished capacity, but rather relates to diminished responsibility All that to say the evidence in this case did not support the theory of defense instruction Which is another reason that this court should find that the district court properly declined to give it and then further The proposed instruction. Mr. Bravo Lopez submitted did not correctly state the law and we've explained why in our briefs I'll just go over the reasons very briefly. First of all, it did not identify the specific intent requirements of the crime just broadly Instructed the jury to find that mr Bravo Lopez had the necessary state of mind to knowingly and purposefully commit the crimes It was very confusing because these crimes have specific mens rea requirements for particular elements and that sort of broad language Was was not a correct statement of the law And then also the instruction affected effectively directed the jury to find mr. Bravo Lopez had the mental conditions he claimed So for those reasons the proposed instruction that mr. Bravo Lopez submitted did not Correctly state the law counsel would you? address the issues raised in the brief concerning Bravo Lopez's interrogation how he was Chips absolutely for multiple hours and basically kept up all night Absolutely judge. The context is important here. What was going on when? Mr Bravo Lopez was was arrested was the detectives and other officers involved in this investigation Were actively searching for the kidnapping victim the kidnap the victim's body had not been found the officers I believe probably surmised reasonably that the victim was dead, but they did not know so they were actively searching for a kidnapping victim Mr. Bravo Lopez was arrested and he was placed into the interview room where he remained for about four hours It was as you say judge Smith late at night He was allowed to rest. However during the time he was in that interview room the interview itself Took about four took about five hours just shy of five hours the questioning But I think one one thing the court should recognize it is that during much of that time the detectives were not actually interrogating Mr. Bravo Lopez what rather they were all looking at maps to try to figure out where the kidnapping victim's body could be found So it was five hours, which is a good chunk of time, but he wasn't necessarily being interrogated for all that time Other to other times he was given breaks There was a few hours spent driving around Looking for the kidnapping victim's body before they all returned to the interview room and the interview recommenced for about an hour and a half Mr. Bravo Lopez was given Opportunities to use the restroom he was given Juice he was given snacks He was asked whether he was too tired to continue and he said no under those circumstances Particularly in the context of search of an active investigation Looking for a kidnapping victim who could be alive or dead what the officers did was not unreasonable What what in the record gives us assurance that he understood the Miranda warnings his own words judge The detective read him the Miranda warnings and he said he understood and he said he wanted to talk I think the court should take him at his word Beyond that what the district court found important was his other statements during the interview the district court found that rather than not Understanding what was going on? Mr. Bravo Lopez presented as an individual who was being cagey The district court used and that's borne out by the transcript and video of the interview which shows that mr Bravo Lopez initially tried to deny involvement in the crime But then when the detectives presented him with additional information, he would acknowledge a little bit more he would acknowledge Okay Well, I was with them when the kidnapping happened but I was being threatened and I had my head down and they were pointing guns at me and Then after they showed him the video of the kidnapping that shows him getting out of the car with a gun He finally acknowledged. Yes I was involved because there wasn't really much of an option for him to say anything else at that point But throughout the entire time even though the detective pressed him to admit to it He denied consistently that he had been the one to shoot the kidnapping victim, which shows that his will was not overborne Another important point here. I think is that the question of whether mr Bravo Lopez Understood the Miranda waiver whether it was a knowing and intelligent waiver is a question of fact and So this court's review of that issue is for clear error and here the district court did not clearly air. Mr Bravo Lopez was 21 years old. He had attended school into the ninth grade He was not intellectually disabled. The video shows he understood what was going on and It also shows that he was he had the mental acuity to shift his story to adjust to new evidence that the detectives Presented to him during the course of the interview. His intellect was rated as borderline. Is that correct? That's correct. Your honor It was rated as borderline But he was not mentally disabled and this court has even found that mentally disabled individuals are able to knowingly and voluntarily waive their Miranda rights I think you know, of course there was a an opinion by a I believe a Neuropsychologist in this case that mr. Bravo Lopez was not able to Knowingly and intelligently waive his rights, but I think the district court properly gave that opinion little credence It was a conclusory opinion. I think that that doctor had a Misunderstanding of the Necessity of a defendant to understand the consequences of a Miranda waiver the Supreme Court has been very clear And it's in a case we cite in the brief Colorado versus Spring says the Constitution does not require that a criminal suspect to know And understand every possible consequence of a waiver of the Fifth Amendment privilege What a defendant has to understand is that they have them they have the right not to talk They have a right to talk to an attorney and that anything they say can and will be used against them Miranda does not require more than that and mr. Bravo Lopez certainly had the mental ability to understand those simple concepts The district court Correctly considered their totality of the circumstances. It did not it did not clearly err in finding that mr Bravo Lopez knowingly and intelligently waived his Miranda rights If I could I'd like to turn within the amount of time I have left I'd like to turn to the sufficiency of the evidence showing an agreement to join a conspiracy because there was a few points raised During mr. Bravo Lopez's argument that I think merit a response The first is his point which was not raised in the briefs that the jury instructions required a verbal or oral understanding I don't think that's right. The jury instructions said that a verbal or oral understanding can be sufficient They did not say it is required The jury instructions also said and I'm paraphrasing a little bit here that in a defendant joins a conspiracy by voluntarily and intelligently Participating in the unlawful plan with the intent to further the object of the crime. There's no this court's law isn't Hallucinally clear on this issue that a verbal understanding is not required and to the extent the jury instructions did Require more that to the extent the jury instructions did require a verbal or oral understanding Where this court's law requires only a tacit agreement This court evaluates the sufficiency of the evidence according to the law not according to the additional requirement Added in the jury instruction and that principle comes from a Supreme Court opinion called Musacchio Which I would be happy to send the court in the 20HA letter I didn't brief it because this argument hadn't been raised in the brief But Musacchio says that if the jury instructions add another element to the offense that the law does not require The court does not evaluate the sufficiency of the evidence according to that additional element The court evaluates the sufficiency of the evidence according to the controlling law And of course What the jury saw at the trial was evidence that no one could doubt showed an agreement to join a conspiracy They saw mr. Bravo Lopez and mr. Osorio jump out of a car with guns drawn They saw him a cot they saw both of them simultaneously Accost the victim mr. Escudillo with firearms point their firearms at the victim beat him with the firearms Force him into the car against his will where they continued beating him as they drove around eventually driving into Kansas where they forced him out of the car and shot him three times in the head a Reasonable jury who viewed that the video of the kidnapping which again it was caught on tape would have no doubt That the defendants had at least tacitly agreed to commit a kidnapping if they hadn't agreed to commit a kidnapping Then what were they doing? There is no alternative explanation that any reasonable jury could have concluded This court said in United States versus Winston Which we cited in the brief that direct evidence of an explicit agreement is not necessary to prove a conspiracy Instead a tacit understanding among co-conspirators may be and often will be inferred from circumstantial evidence the evidence in this court in this case showed just sort just such a tacit agreement and was sufficient for Reasonable jury to convict the defendants of conspiracy. I See, my time is up unless there are further questions. I would ask the court to affirm Thank You. Mr. Wagner Mr. Johnson Little time, but I would like to point we'll fulfill the minute. We'll give you a full minute. Okay. Thank you I would like to respond first to the issue that Mr. Wagner raised with respect to the fact that I didn't say what was wrong with the government's instruction That's not true. And it's in the record I mean one of the most glaring things that was wrong with the government's instruction was the fact that it questioned whether or not Mr. Bravo Lopez suffered from the incapacity's in a borderline intellectual disability those kind of things That's that's totally wrong. He did the only evidence at the trial was presented by me and by dr Entity the neuropsychologist who clearly testified that he did have a borderline intellectual functioning Intelligence So I did point out what was wrong with it And in fact, if you look at the edits that I made to their Proposed jury instructions I changed that and I didn't change any of the parts that the argues now that about the specific intent elements Which they claimed were more clear than one in our version. I left those as they were So I I don't again I don't think that I waived it and I would use whatever other time I have to answer any questions that you might have about anything else I Don't see any Court wishes to thank all counsel for participation in argument before us today. I will consider the argument in supplementation to the briefing and render decision in due course court also notes that Counsel for the defendants have served under the Criminal Justice Act and we appreciate your willingness to participate on our panel Thank you Madam clerk, would you call case number two for the morning, please? 23-3 to 1 for southern, Iowa United States versus Jonathan Sutton